**United States District Court**
**For the Northern District of California**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

DONNA AVILA, *et al.*,

    Plaintiffs,

v.

WILLITS ENVIRONMENTAL REMEDIATION TRUST, *et al.*,

    Defendants.

No. C 99-3941 SI

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIMS**

On December 22, 2006, the Court heard argument on defendants' motion for summary judgment on plaintiffs' claims for intentional infliction of emotional distress. After consideration of the parties' papers and arguments, the Court hereby GRANTS defendants' motion for the reasons set forth below.

**BACKGROUND**

**1.  Intentional infliction of emotional distress allegations**

As a result of various Court orders and settlements, there are 122 plaintiffs with remaining claims in this case. Defendants now move for summary judgment on these plaintiffs' claims for intentional infliction of emotional distress. Plaintiffs' seventh cause of action in the Fifth Amended [First Consolidated] Complaint alleges a claim for intentional infliction of emotional distress ("IIED"). Plaintiffs allege that defendants have engaged in extreme and outrageous conduct by intentionally subjecting plaintiffs to hazardous substances and failing to warn plaintiffs of the types and releases of toxic chemicals. Compl. ¶¶ 205-08. Plaintiffs allege that as a result of this conduct, certain plaintiffs have suffered "serious and genuine emotional distress, including but not limited to, a reasonable fear of developing" cancer and other diseases. *Id.* ¶ 207.

**2.    Discovery**

Defendants propounded three interrogatories regarding plaintiffs' claims for intentional infliction of emotional distress, Interrogatory Nos. 19-21. These interrogatories asked: "For each Plaintiff asserting a claim for intentional infliction of emotional distress, <u>IDENTIFY any all facts, evidence and DOCUMENTS</u> showing that each DEFENDANT"

- "directed the alleged conducted described [in your Complaint] at each such Plaintiff or engaged in such alleged conduct in each such Plaintiff's presence." (Interrogatory Nos. 19)

- "was aware of each Plaintiff's presence when allegedly engaging in the conduct described in [the intentional infliction of emotional distress portion] of YOUR COMPLAINT." (Interrogatory No. 20)

- "was aware or substantially certain that each Plaintiff would suffer severe emotional injury when allegedly engaging in conduct described in [the intentional infliction of emotional distress portion] of YOUR COMPLAINT." (Interrogatory No. 21).

McShane Decl. Ex. B (defendants' fourth set of interrogatories). In response to these interrogatories, plaintiffs answered that "Defendants engaged in such conduct with reckless disregard for Plaintiffs' safety and well being" and incorporated by reference their response to Interrogatory No. 12. Plaintiffs' response to Interrogatory No. 12, in turn, stated, *inter alia*,

> The Plaintiff homes are located in such close proximity to the Remco facility that Defendants knew or should have known of the significant risks to the homeowners the numerous release[s] of chemical into both the air and water would pose on these residents. Moreover, Defendants knew that the facility was releasing chromium into the air outside of the building for years. The chromium in the air was permitted to migrate throughout the town of Willits with impunity. The facility is located adjacent to many homes, within close proximity to many others and the air in the Little Lake valley is and was capable of transporting Remco's chromium through the air for great distances reaching additional homes. The facility had its exhaust vents that spewed the chromium from the facility pointed directly towards the local elementary school located right across the street. The local supermarket for the town was located right across the street as well.

*Id.* Ex. C. at 5.

In addition to this general response on behalf of all plaintiffs, 117 plaintiffs provided individual responses to Interrogatory Nos. 19-21. In response to Interrogatory No. 19, 106 of those plaintiffs stated, "This individual plaintiff is not aware of any facts, evidence or documents which would show that Defendant intended to direct its harmful conduct to this Plaintiff. Plaintiff refers to and incorporates the

2

general responses to these interrogatories." *Id.* Ex. C (Supp. Responses) at 4. These same 106 plaintiffs answered "not applicable" to Interrogatory No. 20, which asked for any evidence that defendants were aware of plaintiffs' presence. *Id.* In response to Interrogatory No. 21, these 106 plaintiffs responded that "Defendant was aware or substantially certain that this individual Plaintiff would suffer severe emotional injury as a result of Defendant's harmful conduct." *Id.*

Eleven plaintiffs provided supplemental individual responses different from those described above. These responses state, *inter alia*, that "there is no way that management could not have known that Remco was creating a hazardous condition for Willits' citizens," and that the disposal of hazardous wastes in and around Willits was intentional. *Id.* at 6, 8.[1]

Five plaintiffs did not provide any responses to defendants' fourth set of interrogatories. *See* McShane Decl. ¶ 9.

In an order filed December 27, 2004, the Court denied defendants' motion to compel further responses to Interrogatory Nos. 19 through 21, and also held that plaintiffs would not be permitted to add further facts to their responses. That order stated:

> In these interrogatories, defendants seek all facts showing that each defendant engaged in the tortious conduct in each plaintiff's presence (Interrogatory No. 19), that each defendant was aware of each plaintiff's presence when engaging in the conduct (Interrogatory No. 20), and that each defendant was aware or substantially certain that each plaintiff would suffer severe emotional injury (Interrogatory No. 21). Plaintiffs' response refers to their response to Interrogatory No. 12, which contains their narrative regarding defendants' active concealment of hexavalent chromium releases. The Court accepts plaintiffs' representation that the answers are complete and, on that basis, declines to order further response. However, the Court also orders that plaintiffs will not be permitted to add further facts to their response at a later time.

Order Re: Parties' Motions to Compel Further Responses to Interrogatories at 6-7.

## LEGAL STANDARD

Summary adjudication is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

---

[1] The individual supplemental responses are discussed in greater detail *infra*.

3

In a motion for summary judgment, "[if] the moving party for summary judgment meets its initial burden of identifying for the court those portions of the materials on file that it believes demonstrate the absence of any genuine issues of material fact, the burden of production then shifts so that the non-moving party must set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial." *See T.W. Elec. Service, Inc., v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)). In judging evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, and draws all inferences in the light most favorable to the non-moving party. *See T.W. Electric*, 809 F.2d at 630-31 (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)); *Ting v. United States*, 927 F.2d 1504, 1509 (9th Cir. 1991). The evidence presented by the parties must be admissible. *See* Fed. R. Civ. P. 56(e). Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *See Thornhill Publ'g Co., Inc. v. Gen. Tel. & Elec. Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

## DISCUSSION

Defendants contend that plaintiffs have not met their burden to present sufficient evidence on a key element of their claim for intentional infliction of emotional distress: that defendants' conduct was directed at these particular plaintiffs or that defendants were aware, but engaged in reckless disregard, of the plaintiffs and the probability that they would suffer severe emotional distress.[2] Plaintiffs' opposition concedes that defendants did not direct their conduct at plaintiffs, but contends that plaintiffs have submitted sufficient evidence that defendants acted in reckless disregard of their interests.

Under California law, "the elements of the tort of intentional infliction of emotional distress are (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional

---

[2] Defendants' motion does not address the other elements of plaintiffs' intentional infliction of emotional distress claims, such as whether defendants' conduct was "outrageous," whether plaintiffs suffered "extreme emotional distress," or whether defendants' conduct was a proximal cause of any such distress.

4

distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct . . . . The defendant must have engaged in 'conduct intended to inflict injury or engaged in with the realization that injury will result.'" *Christensen v. Superior Court*, 54 Cal.3d 868, 903 (1991) (*quoting Davidson v. City of Westminster*, 32 Cal.3d 197, 209-10 (1982). "It is not enough that the conduct be intentional and outrageous. It must be conduct directed at the plaintiff, or occur in the presence of a plaintiff of whom the defendant is aware." *Christensen*, 54 Cal.3d at 903.

The California Supreme Court has held that the only exception to the general rule limiting claims of intentional infliction of emotional distress to egregious conduct *toward plaintiff* is "when the defendant is aware, but acts with reckless disregard, of the plaintiff and the probability that his or her conduct will cause severe emotional distress to that plaintiff." *Potter v. Firestone Tire & Rubber Co.*, 6 Cal.4th 965, 1001-02 (1993).[3] In *Potter*, the plaintiffs were residents who lived adjacent to a landfill at which the dumping of toxic substances was prohibited. For a number of years Firestone disposed of toxic wastes at the landfill, despite its knowledge that the disposal of such substances was prohibited. *Id.* at 975-76. The plaintiffs discovered that toxic chemicals had contaminated their domestic water wells, and sued Firestone for, *inter alia*, intentional infliction of emotional distress. *Id.* at 976. The trial court found in favor of the plaintiffs and held Firestone liable for intentional infliction of emotional distress because documents showed that Firestone knew of the dangers of toxic waste, and knew that the landfill prohibited the disposal of such substances, and yet Firestone continued to dispose of its waste at the site. *Id.* at 977.

The California Supreme Court remanded the plaintiff's intentional infliction of emotional distress

---

[3] At the hearing, plaintiffs' counsel suggested that the California Civil Jury Instructions somehow required a lesser showing of knowledge on the defendants' part. However, those instructions cite *Christensen* and *Potter*, and state that in order for a plaintiff to prevail on a claim for intentional infliction of emotional distress claim, a plaintiff must prove, *inter alia*,

> [That [name of defendant] intended to cause [name of plaintiff] emotional distress;] [or]
>
> [That [ name of defendant ] acted with reckless disregard of the probability that [[ name of plaintiff ]/the group of individuals including [ name of plaintiff ]] would suffer emotional distress, knowing that [he/she/they] [was/were] present when the conduct occurred;].

Judicial Council of California Civil Jury Instruction 1601 (Intentional Infliction of Emotional Distress – Fear of Cancer, HIV or AIDS) (2006).

claim, and found that it was "questionable" whether the record supported a finding of Firestone's liability on that claim. The court noted that it was ambiguous whether the lower courts had determined that "Firestone's conduct was directed at these particular plaintiffs in the sense intended by *Christensen*."

> Although the Court of Appeal correctly rejected Firestone's contention that Firestone was not liable because it did not know the particular names of any individual whose groundwater was contaminated by the hazardous waste, it is unclear whether it believed that Firestone was actually aware of these particular plaintiffs and their consumption and use of the water.
>
> Furthermore, it is questionable whether the trial court made a finding that Firestone possessed the requisite knowledge, and if so, whether such a finding would be supported by substantial evidence. Although the trial court concluded that Firestone "had to realize" that the eventual discovery of the toxic contamination "by those drinking the contaminated water would almost certainly result in their suffering severe emotional distress," this may be interpreted in one of two ways. First, this may have been a finding that Firestone actually knew of these particular plaintiffs and their consumption of the water, and nevertheless sent prohibited wastes to Crazy Horse [landfill] despite a realization that plaintiffs would almost certainly suffer severe emotional distress upon their discovery of the facts. Alternatively, this may have been a finding that Firestone had to have realized that its misconduct was almost certain to cause severe emotional distress to any person who might foreseeably consume the water and subsequently discover the facts. Although the knowledge requirement is met in the first interpretation of the court's ruling, it is not satisfied under the second because knowledge of *these particular plaintiffs* is lacking.

*Id.* at 1002-03 (emphasis in original).

Defendants contend that plaintiffs do not have any evidence that the disposal of waste was done with knowledge of *each particular plaintiff's* presence and with a realization that each plaintiff would suffer severe emotional distress. In opposition, plaintiffs do not rely on their interrogatory responses, but rather have submitted various documents, depositions excerpts, and the declaration of Charles Nickerman, to support their claim that defendants acted with reckless disregard of plaintiffs. Defendants object to most of plaintiffs' evidence on the ground that it is barred by the Court's previous discovery order. Alternatively, defendants contend that even if the Court accepts plaintiffs' evidence, plaintiffs still have failed to raise a triable issue of fact on their claim for intentional infliction of emotional distress.

As an initial matter, the Court agrees with defendant that the majority of plaintiffs' evidence in opposition to the instant motion for summary judgment is barred by the Court's December 27, 2004 order. The Court denied defendants' motion to compel further responses to Interrogatory Nos. 19-21 based on plaintiffs' representation that the responses were "complete." The Court also ordered,

6

however, "that plaintiffs will not be permitted to add further facts to their response at a later time." Accordingly, plaintiffs' claims for intentional infliction of emotional distress must be limited to the facts and evidence disclosed in their interrogatory responses.

The Court concludes that plaintiffs' interrogatory responses do not contain any facts showing that defendants "actually knew of these particular plaintiffs and their consumption of the water, and nevertheless [continued to dispose of chromium] despite a realization that plaintiffs would almost certainly suffer severe emotional distress upon their discovery of the facts." *Potter*, 6 Cal.4th at 1002-03.[4] Instead, both the general and individual responses assert that Remco knew or should have known about plaintiffs' exposure and risk, which under *Potter* is insufficient. The general response states that Remco disposed of toxic waste in violation of the law, and that "the Plaintiff homes are located in such proximity to the Remco facility that Defendants knew or should have known of the significant risks to the homeowners the numerous release[s] of chemical into both the air and water would pose on these residents." McShane Decl. Ex. C at 5. The individual supplemental responses similarly state, *inter alia*, that "there is no way management could not have known Remco was creating a hazardous condition for Willits' citizens," *id.* at 6 (Bernadette Marie Avila); that "upper management [was] well aware of what they were doing because they dumped the hazardous waste in spots where, we, the citizens, would not notice . . . especially dump[ing] at night," *id.* at 15 (Frank G. Avila); and "upper management knowingly caused my family and myself harm because they did nothing to explain why they dumped/released all their chemicals into our environment, let alone explain to their employees why the Remco chemicals would cause their own employees harm." *Id.* at 9 (Donna Avila).

Under *Potter*, plaintiffs' factual assertions are insufficient to raise a triable issue of fact on their claims for intentional infliction of emotional distress. Instead, plaintiffs' showing is more akin to the situation described in *Potter* in which a defendant "had to have realized that its misconduct was almost certain to cause severe emotional distress to any person who might foreseeably consume the water and

---

[4] Indeed, it appears impossible for plaintiffs to make this showing for 57 of the remaining plaintiffs. Defendants assert, and plaintiffs do not dispute, that 6 plaintiffs never lived in Willits, and 51 plaintiffs only lived in Willits after December 31, 1998. *See* McShane Decl. ¶ 8, Ex. F. Abex Corporation sold the Remco facility to Remco Hydraulics in December 1988. Complaint ¶¶ 13-18.

subsequently discover the facts." *Potter*, 6 Cal.4th at 1003. As the *Potter* court held, such a theory would support a claim for negligent infliction of emotional distress, but not intentional infliction of emotional distress. Plaintiffs contend that *Potter* is factually distinguishable because *Potter* involved an isolated landfill whereas the Remco facility was located in the center of town. However, the holding in *Potter* – that a plaintiff must have evidence that a defendant acted with knowledge of that particular plaintiff, and of the harm caused to that plaintiff – did not turn on the specific facts presented in *Potter*. Instead, the California Supreme Court articulated a more general statement of the law, and emphasized that a plaintiff asserting a claim for intentional infliction of emotional distress faced a heavy burden to establish the defendant's knowledge "of these particular plaintiffs." *Id.* at 1003.

The Court further finds that even if plaintiffs were permitted to augment the record with the evidence they have submitted in support of their opposition, summary judgment in favor of defendants would nevertheless be warranted. Plaintiffs have submitted evidence of (1) contamination at the Remco site and in the drainage ditch outside the facility, including evidence that employees were directed to dispose of waste at night so neighbors would not see the disposal; (2) offsite contamination in the surrounding Willits community; and (3) complaints filed by non-plaintiff Willits residents about leaks at the Remco facility and/or Remco's disposal of toxic waste. Plaintiffs devote much of their opposition arguing that this evidence demonstrates that defendants engaged in "outrageous conduct" because defendants were aware that they were violating the law through their disposal methods. However, plaintiffs' arguments miss the point because they do not address the specific contention made by defendants, namely whether defendants acted with knowledge of these particular plaintiffs.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby GRANTS defendants' motion for summary judgment. (Docket No. 705).

**IT IS SO ORDERED.**

Dated: January 10, 2007

SUSAN ILLSTON
United States District Judge

8