IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONNA AVILA, *et al.*,<br><br>       Plaintiffs,<br><br>  v.<br><br>WILLITS ENVIRONMENTAL REMEDIATION TRUST, *et al.*,<br><br>       Defendants.<br>_____ / | No. C 99-3941 SI<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS CERTAIN *COTTLE* PLAINTIFFS FOR FAILURE TO MAKE OUT *PRIMA FACIE* CASE OF CAUSATION** |

On June 15, 2007, the Court heard argument on defendants' motion to dismiss certain *Cottle* plaintiffs. After consideration of the parties' papers and arguments, the Court hereby GRANTS defendants' motion for the reasons set forth below.

**BACKGROUND**

The fifth amended complaint alleges that plaintiffs have suffered personal injuries as a result of toxic chemicals emitted from the former Remco Hydraulics facility located in Willits, California. Defendant Whitman's predecessor ceased ownership and operation of the Remco facility in 1977, and defendant Pneumo Abex's predecessor ceased ownership and operation of the Remco facility in November 1988. Fifth Amended Complaint ("FAC") ¶¶ 15-16.

Earlier in this litigation, defendants requested that the Court order two groups of plaintiffs – those who had never lived in Willits and those who had only lived in Willits after 1988 – to submit a *prima facie* showing of exposure and medical causation ("*Cottle* plaintiffs"). By order filed December 9, 2004, the Court granted defendants' request. Case Management Order No. 4 ("CMO No. 4"), dated

March 1, 2005, specifically set forth what information and evidence these plaintiffs must provide to defendants in support of their claims. CMO No. 4 required that each of the *Cottle* plaintiffs submit percipient and expert affidavits setting forth "all facts" supporting such plaintiff's claimed exposure to hazardous substances discharged or released by defendants' predecessors. CMO No. 4 at 3. In addition, the Court required a written statement "from a physician, medical and/or other expert" stating "a description of each injury, illness or condition for which such Plaintiff seeks recovery in this action," "the identity of the chemical to which such Plaintiff was exposed," a "statement that there is a reasonable medical probability that the exposure caused each injury, illness or condition referred to above," and a "statement of the scientific and medical basis upon which the expert's opinion is based." *Id*. at 3-4.

In Scheduling Order No. 6, filed on October 16, 2006, the Court set a December 2006 deadline for the *Cottle* plaintiffs to present their *prima facie* case as required by CMO No. 4. By order filed December 6, 2006, the Court granted plaintiffs' request to extend this deadline, and set a new deadline of February 15, 2007.

Plaintiffs provided their percipient and expert affidavits to defendants on February 15, 2007. Defendants now move to dismiss the claims of sixteen plaintiffs for failure to submit any evidence of medical causation; for each of the sixteen plaintiffs, plaintiffs' expert Dr. Levin expressly declined to render an opinion that there is a connection between any of their alleged injuries and Remco contamination.

**DISCUSSION**

For a plaintiff to succeed on a claim for personal injury, he or she must prove, *inter alia*, that the defendant's actions were a cause in fact, or an actual substantial factor in the cause, of the plaintiff's injuries. *See Jones v. Ortho Pharm. Corp.*, 163 Cal. App. 3d 369, 402-03 (Cal. App. 1985). Where a plaintiff alleges that hazardous substances were a "substantial factor" in causing his or her alleged injury, that plaintiff must prove exposure to the hazardous substances, *see Ferris v. Gatke Corp.*, 107 Cal. App. 4th 1211, 1220 n.4 (Cal. App. 2003), and also must show "to a reasonable medical probability based upon competent expert testimony" that such exposure was the cause, or a substantial factor in the

cause, of the injury. *See Jones*, 163 Cal. App. 3d at 402. "Mere possibility alone is insufficient to establish a *prima facie* case" of medical causation because "[t]here can be many possible 'causes,' indeed, an infinite number of circumstances which can produce an injury or disease." *Id*.

The California Supreme Court has held that the cost of medical monitoring is a compensable item of damages "where the proofs demonstrate, through reliable medical expert testimony, that the need for future monitoring is a reasonably certain consequence of a plaintiff's toxic exposure and that the recommended monitoring is reasonable."

> In determining the reasonableness and necessity of monitoring, the following factors are relevant: (1) the significance and extent of the plaintiff's exposure to chemicals; (2) the toxicity of the chemicals; (3) the relative increase in the chance of onset of disease in the exposed plaintiff as a result of the exposure, when compared to (a) the plaintiff's chances of developing the disease had he or she not been exposed, and (b) the chances of the members of the public at large of developing the disease; (4) the seriousness of the disease for which the plaintiff is at risk; and (5) the clinical value of early detection and diagnosis.

*Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 1009 (Cal. 1993).[1] The *Potter* court emphasized that "[t]he five factors provide substantial evidentiary burdens for toxic exposure plaintiffs and do not, as Firestone insists, allow medical monitoring damages to be based solely upon a showing of an increased but unquantified risk resulting from exposure to toxic chemicals." *Id*.

The California Supreme Court has also held that in order to recover for fear of developing cancer as a result of exposure to toxic substances, a plaintiff must first prove the elements of a negligence cause of action, and also, *inter alia*, "establish the reasonableness of his or her fear of cancer." *Id*. at 989. "A carcinogenic or other toxic ingestion or exposure, without more, does not provide a basis for fearing future physical injury or illness which the law is prepared to recognize as reasonable." *Id*. The Court added that "emotional distress caused by the fear of a cancer that is not probable should generally not be compensable in a negligence action." *Id*. at 990.

Defendants move to dismiss with prejudice the following sixteen plaintiffs: Trinity Clark, Evangeline Crawford, Richard Crossman, Eric Hensley, Baylee Kaser, Steven McCann, Dorothy McClellan, Wellington McClellan, Matthew Montes, Brandi Nunes, Terry Nunes, Taylor Polen, Ian

---

[1] As defendants correctly note, medical monitoring is not a separate cause of action. Instead, medical monitoring costs are recoverable damages where the other elements of a negligence or other tort claim are proven. *Id*. at 1005.

3

Seymour, Tyler Sparkman, Kayla Werner, and Dakota Williams. In his February 13, 2007 declaration, plaintiffs' expert, Dr. Levin, was unable to render any opinion about whether there is a connection between these individuals' alleged injuries and Remco contamination. Dr. Levin's February 13, 2007 affidavit states, in relevant part,

| | |
|---|---|
| Trinity Clark | Based upon the absence of serious environmentally induced injuries in the medical records available to me, I have no opinion as regards the impact of environmental exposures on this child's current state of health. |
| Evangeline Crawford | The medical records available to me do not provide me enough information to make an opinion regarding the patient's environmental exposures and her present state of health. |
| Richard Crossman | Based on the patient's personal habits, occupational exposures and the medical records available to me, I am unable to make an opinion on the impact his exposures from the Remco contamination sites in his present health. |
| Eric Hensley | Based upon the medical records available to me at this time, I am unable to make an opinion as to the impact of the patient's exposure to the Remco contamination sites and his present state of health. |
| Baylee Kaser | Given the absence of adequate records, I am unable to offer an opinion on the impact of the Remco contamination on this patient's present state of health. |
| Steven McCann | Based on the patient's obesity and the consequent problems associated with this condition I am unable to render an opinion on the impact of the Remco contamination on this child's present state of health. |
| Dorothy McClellan | I can find no conditions upon which I could opine to a reasonable degree of medical certainty were caused by exposure to toxic substances emanating from the Remco contamination sites. |
| Wellington McClellan | The records are silent for any conditions which I could attribute, to a reasonable degree of medical certainty, to the Remco contamination site. |
| Matthew Montes | I do not have sufficient medical evidence to render an opinion as to the impact of this patient's exposure to the Remco contamination sites and his present state of health. |
| Brandi Nunes | I can find no conditions that I can link, to a reasonable degree of medical certainty, to the Remco contamination sites. |
| Terry Nunes | The medical history for this patient is too convoluted to allow me to parse out what disorders are related to Remco contamination. . . . Opinion: None. |
| Taylor Polen | Medical records show only one episode of mild pneumonia. . . . Opinion: None. |
| Ian Seymour | The record does not allow me to form an opinion to a reasonable degree of medical certainty regarding the impact of this child's exposure to the Remco contamination sites and his present state of health. |
| Tyler Sparkman | Medical records reveal numerous bacterial and viral infections over the years but |

4

| | |
|---|---|
| | the frequency and severity are not sufficient for me to render an opinion, to a reasonable degree of medical certainty, as to the impact of the Remco contamination sites and the patient's present state of health. . . . Opinion: None. |
| Kayla Werner | I have no opinion to a reasonable degree of medical certainty on the impact of the Remco contamination sites and this child's state of health. |
| Dakota Williams | Opinion: None. |

*See* Tate Decl. Ex. A at 24-25, 28-32, 37-38, 45-48, 50-55, 58-59, 67-70, 74-77. Dr. Levin's February 13, 2007 report also does not provide any opinion regarding whether these sixteen individuals are at risk of developing a disease in the future, or whether they suffer emotional distress related to a fear of future disease.

Plaintiffs' four page opposition responds[2] that thirteen of the plaintiffs "have sufficient grounds to bring" claims for "medical monitoring" and "negligence based on fear of disease."[3] Plaintiffs thus appear to concede that the Court should dismiss these individuals' *current* personal injury claims, and that the Court should dismiss all of the personal injury claims of three of the *Cottle* plaintiffs (Richard Crossman, Dorothy McClellan, and Wellington McClellan).

With respect to the thirteen individuals' "medical monitoring" and "negligence based on fear of disease" claims, plaintiffs rely on a May 28, 2007 letter from Dr. Levin, and portions of Dr. Levin's deposition. Plaintiffs also request the Court to take "judicial notice" of Dr. Levin's February 13, 2007 report, and of the "facts and exhibits" presented in plaintiffs' opposition to defendants' motion for summary judgment on the IIED claims.[4] Aside from highlighting a few statements from Dr. Levin's letter and report, as well as Dr. Levin's deposition, plaintiffs do not attempt to show how they have met

---

[2] On the date that plaintiffs' opposition was due, plaintiffs "mistakenly" filed a letter brief that was an opposition to a discovery dispute from December 2006. Several days later, plaintiffs filed an "amended opposition," along with an amended affidavit from Dr. Levin. Defendants move to strike these documents as untimely. Although the Court does not condone untimely filings, in the interest of addressing the merits of the parties' arguments, the Court will not strike plaintiffs' untimely opposition papers.

[3] Plaintiffs also assert that the Court should not dismiss plaintiffs' intentional infliction of emotional distress claims; the Court granted summary judgment in favor of defendants on the IIED claims in December 2006.

[4] To the extent plaintiffs request the Court to take judicial notice of the "facts" contained within these documents, the Court DENIES plaintiffs' request. The Court will consider whether these documents satisfy plaintiffs' *prima facie* showing.

1  the showing required by CMO No. 4.

2  Dr. Levin's May 28, 2007 letter states in its entirety:

> Re:  Need for medical monitoring in *Avila v. Willits Remedial Trust et al.* plaintiffs for whom the record does not allow me at this time to form an opinion to a reasonable degree of medical certainty regarding the impact of the person's exposure to the Remco contamination sites and their present state of health.
>
> Based upon my training, education, experience and the nature of their toxic exposure it is my opinion to a reasonable degree of medical certainty that medical monitoring is warranted for the plaintiffs listed below. This is because it is reasonably certain that they will develop a disease in the future as a direct consequence of their exposure to the Remco contamination site and that this disease would not have developed but for the exposure to the Remco contamination site. This medical monitoring is available and is beyond that which an individual should pursue as a matter of good sense and foresight.
>
> [list of 13 plaintiffs' names and ages]

May 28, 2007 letter from Dr. Levin.

There are numerous problems with plaintiffs' arguments and evidence. Plaintiffs failed to comply with CMO No. 4 because they did not submit information and evidence regarding their claims for medical monitoring or negligence based on fear of disease by the February 15, 2007 deadline. CMO No. 4 required, *inter alia*, a written statement "from a physician, medical and/or other expert" stating "a description of each injury, illness or condition for which such Plaintiff seeks recovery in this action," and a "statement of the scientific and medical basis upon which the expert's opinion is based." *Id*. at 3-4. Plaintiffs' claims for medical monitoring and negligence based on fear of disease were encompassed in the Fifth Amended Complaint,[5] and thus should have been addressed in plaintiffs' *prima facie* showing. Dr. Levin's February 13, 2007 report does not address plaintiffs' risk of developing a disease in the future, nor does it discuss plaintiffs' emotional distress related to a fear of developing disease.

Plaintiffs attempt to cure this deficiency with Dr. Levin's May 28, 2007 letter. Plaintiffs did not

---

[5] The FAC alleges that "[p]laintiffs currently suffer or are reasonably certain to suffer in the future from cancer [and other diseases] and other severe medical ailments for which medical attention has been required and will continue to be required in the future." FAC ¶ 99. The FAC further alleges, "[p]laintiffs have suffered damages as a result of toxic exposure. Plaintiffs are entitled to compensation for damages from present illnesses; damages for increased risk of illness; damages for future medical monitoring; . . . damages for severe emotional distress and fear caused either intentionally or negligently by Defendants." *Id*. ¶ 100; *see also id.* at ¶¶ 101 (damages related to "fear"); 158 (suffer future disease); 167 ("fear of cancer" and treatment in the future for injuries).

6

seek leave of Court to file the May 28, 2007 letter, and plaintiffs have provided no explanation of why they were unable to submit Dr. Levin's letter by the February 15, 2007 deadline in conjunction with Dr. Levin's lengthy report. Plaintiffs have been aware of the requirements and deadlines set forth in CMO No. 4 since March 2005. Plaintiffs have repeatedly failed to comply with Court deadlines, which has delayed the management of this case. The Court will not countenance further unexplained and unjustified failures to comply with agreed-upon case management deadlines. Accordingly, the Court STRIKES the May 28, 2007 letter. (Docket No. 823).[6]

Even if the Court considered Dr. Levin's May 28, 2007 letter, however, this letter does not satisfy plaintiffs' *prima facie* showing for several reasons. Dr. Levin's one page letter asserts, without setting forth any supporting facts or data, that it is his opinion "to a reasonable degree of medical certainty that medical monitoring" is warranted for thirteen plaintiffs. Dr. Levin's May 28, 2007 letter does not, as required by CMO No. 4, include a "statement of the scientific and medical basis upon which the expert's opinion is based." CMO No. 4 at 4. The complete absence of any explanation as to how Dr. Levin reached his opinion also violates Federal Rule of Evidence 702, which requires expert testimony to be "based upon sufficient facts or data." Fed. R. Evid. 702; *see also Clausen v. M/V New Carissa*, 339 F.3d 1049, 1058 (9th Cir. 2003) (district court can exclude expert testimony if expert fails to provide explanation of why alternative hypothesis was ruled out).

At the hearing, plaintiffs' counsel asserted that plaintiffs had met their *prima facie* showing because there is extensive evidence of exposure and contamination in the Willits area. However, regardless of whether plaintiffs have submitted evidence of *exposure*, plaintiffs have failed to submit expert or medical evidence regarding *causation* for any of the sixteen plaintiffs who are the subject of this motion. Plaintiffs' counsel also contended that plaintiffs have shown causation because tests conducted on four plaintiffs' blood revealed dioxin; however, the blood tests were *not* conducted on any

---

[6] The Court also finds that allowing plaintiffs to submit Dr. Levin's May 28, 2007 letter would prejudice defendants. Defendants deposed Dr. Levin on April 26 and 27, 2007 regarding the *Cottle* plaintiffs about whom Dr. Levin had rendered an opinion. Because Dr. Levin had not opined on the 16 plaintiffs subject to this motion, defendants did not question Dr. Levin about these plaintiffs.

7

of the sixteen *Cottle* plaintiffs. *See* Levin Depo. at 202.[7] Finally, plaintiffs rely on Dr. Levin's deposition testimony in which he stated that four months of exposure to toxic substances was sufficient to cause injury. Plaintiffs' reliance on this statement is unavailing, however, because Dr. Levin also testified in his deposition that his opinion was limited to those plaintiffs who "had enough exposure to make – be able to make an opinion to a reasonable medical probability." *Id*. at 335. As Dr. Levin's February 13, 2007 report makes clear, he expressly did not render an opinion "to a reasonable medical probability" as to any of the sixteen *Cottle* plaintiffs.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby GRANTS defendants' motion to dismiss with prejudice. (Docket No. 818). The Court DENIES plaintiffs' request for judicial notice. (Docket No. 825). The Court STRIKES Docket No. 823.

**IT IS SO ORDERED.**

Dated: June 19, 2007

SUSAN ILLSTON
United States District Judge

---

[7] The deposition excerpts provided by defendants do not identify the plaintiffs whose blood was tested. However, defendants assert, and plaintiffs do not dispute, that none of the sixteen *Cottle* plaintiffs subject to this motion had their blood tested.

8