IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONNA AVILA, *et al.*,<br><br>    Plaintiffs,<br><br>  v.<br><br>WILLITS ENVIRONMENTAL<br>REMEDIATION TRUST, *et al.*,<br><br>    Defendants.<br>_____ / | No. C 99-3941 SI<br><br>(Consolidated with Case Nos. C 1-266 SI and C 06-2555 SI)<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF BRENDA McCANN'S WRONGFUL DEATH CLAIM BASED ON DECEDENT JOHN HARRINGTON** |

Defendants have filed a motion for summary judgment on plaintiff Brenda McCann's wrongful death claim based on decedent John Harrington. Pursuant to Civil Local Rule 7-1(b), the Court determines that the matter is appropriate for resolution without oral argument and VACATES the September 22, 2008 hearing on this matter. The 2:30 p.m. case management conference remains on calendar. For the reasons set forth below, the Court GRANTS the motion.

**BACKGROUND**

Plaintiff Brenda McCann, along with a number of other individuals, filed this action on August 23, 1999. In the original complaint, plaintiff McCann alleged her own personal injury claims related to the Remco facility. On January 31, 2002, in *Arlich et al. v. National Remediation Trust Management Company LLC*, C 01-266 SI, which has been consolidated with this case, plaintiff McCann filed a second amended complaint and alleged for the first time a wrongful death claim based on the death of her father, John Harrington. Mr. Harrington lived in Willits from June 1965 until October 1983. Comb Decl. Ex. 2. While he lived in Willits, Mr. Harrington resided at 154 Franklin Avenue, approximately

two blocks west of the Remco facility. *Id*. Ex. 3 at 35. For almost the entire time that he lived in Willits, Mr. Harrington worked at Remco in the machine shop as a Certified Chromer. *Id*.

In approximately 1987, Mr. Harrington was diagnosed with cancer, and he died on October 10, 1992 from metastatic rental cancer. McCann Decl. ¶ 3; Comb Decl. Ex. 1. The death certificate states that chronic obstructive pulmonary disease was also a "significant condition contributing to death." *Id*. According to plaintiff, Mr. Harrington was a smoker for much of his life. McCann Decl. ¶ 3.

## LEGAL STANDARD

Summary adjudication is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

In a motion for summary judgment, "[if] the moving party for summary judgment meets its initial burden of identifying for the court those portions of the materials on file that it believes demonstrate the absence of any genuine issues of material fact, the burden of production then shifts so that the non-moving party must set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial." *See T.W. Elec. Service, Inc., v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). In judging evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, and draws all inferences in the light most favorable to the non-moving party. *See T.W. Electric*, 809 F.2d at 630-31 (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)); *Ting v. United States*, 927 F.2d 1504, 1509 (9th Cir. 1991). The evidence presented by the parties must be admissible. Fed. R. Civ. P. 56(e). Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

**DISCUSSION**

Defendants advance three independent grounds for summary judgment on plaintiff's wrongful death claim.[1] Defendants contend that plaintiff's claim is barred by the statute of limitations, barred by operation of the Workers' Compensation Act, and that there is no evidence that exposure to "Remco hazardous substances" outside of Mr. Harrington's employment was a substantial factor in causing his death. Because the Court finds that plaintiff's claim is time-barred, the Court does not reach the other grounds asserted in defendants' motion.

The parties agree that the applicable statute of limitations for plaintiff's wrongful death claim is one year. *See* Cal. Code Civ. Proc. § 340(3) (2002). Mr. Harrington died on October 10, 1992, and plaintiff did not file her wrongful death claim until January 31, 2002. Thus, plaintiff's wrongful death claim is untimely unless she can show that the statute of limitations was tolled until at least January 31, 2001. Plaintiff relies on the "discovery rule," which "provides that a limitations period does not commence until a plaintiff discovers, or reasonably could have discovered, the claim." *O'Connor v. Boeing North American*, 311 F.3d 1139, 1147 (9th Cir. 2002). "Because '[t]he plaintiff must be diligent in discovering the critical facts' a plaintiff who did not actually know of his claim will be barred 'if he should have known [of it] in the exercise of due diligence.'" *Id.* (quoting *Bibeau v. Pac. N.W. Research Found. Inc.*, 188 F.3d 1105, 1108 (9th Cir. 1999)). The Ninth Circuit has held that a "plaintiff knows or reasonably show know of a claim when he or she knows both of the existence and the cause of his injury." *Id.*

Plaintiff has submitted a declaration stating that she did not know about her wrongful death claim until the spring of 2001 when she completed a detailed questionnaire about herself and her family, including health histories, in connection with litigating her own claims in this lawsuit. Plaintiff states,

> I went through this questionnaire and discussed the questions with my brother Steve. He helped me to remember the answers about our family. Several of the questions asked about cancer, including a question that asked about different forms of cancer, including kidney cancer. By this time, I had learned that there had been cases of cancer in recent years among my neighbors and among Remco workers. But it had never before occurred to me to think about my father's kidney cancer in that context. In the course of discussing and filling out the questionnaire, Steve raised the idea that our father's cancer might possibly have been caused by exposure to Remco chemicals. I had never before

---

[1] Plaintiff recently settled her individual claims.

3

1     thought of that.

2 McCann Decl. ¶ 6. Plaintiff states that prior to completing the questionnaire, she had believed her

3 father's cancer was due to his smoking. *Id.* ¶ 3. Plaintiff also states that prior to 2001, "as far as I can

4 remember, I heard no discussion of cancer cases from the past being attributed to exposure to Remco

5 chemicals." *Id.* ¶ 5.

6     Defendants contend that plaintiff should have reasonably known about her wrongful death claim

7 in 1999 when she filed this lawsuit alleging her own personal injury claims, or shortly thereafter when

8 she filled out one of fellow plaintiff Donna Avila's surveys which contained questions similar to the

9 2001 questionnaire. Defendants note that the August 1999 complaint containing plaintiff's individual

10 claims explicitly discussed the carcinogenic nature of the alleged Remco contamination. That complaint

11 alleged,

> The manufacturing process described in this complaint resulted in the presence of toxic groundwater and surface water plume containing the following substances, among others, on and beyond the boundaries of the Remco site. All substances listed below are carcinogens, with the exception of trivalent chromium. . . . (a) Hexavalent and trivalent chromium. Hexavalent chromium is a known carcinogen. . . . Ingesting very large amounts of chromium can cause . . . kidney, liver damage, and even death.

Complaint ¶ 18. Defendants have also submitted a copy of plaintiff's responses to the "Willits Citizens for Environmental Justice Confidential Health Survey." That document, which is undated,[2] asks several questions regarding cancer, such as "Has anyone in your family living in this house been diagnosed with cancer?" and "Do you know of any neighbors that had or now have cancer?" Combs Reply Decl. Ex. 2. In response to the former question, plaintiff answered "Y 3 Dad + Father in Law - Grand dad." *Id.* In response to the latter question, plaintiff answered "one – cancer." *Id.*

    The Court finds that plaintiff's wrongful death claim is time-barred. "Factual assertions in pleadings and pretrial orders, unless amended, are considered judicial admissions conclusively binding on the party who made them." *Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988).

---

[2] Defendants assert that plaintiff filled out the survey shortly after the *Avila* complaint. The copy filed with the Court is undated. It appears that plaintiff filled out the survey sometime prior to completing the Plaintiff Questionnaire as part of the formal discovery process in *Avila*, because on the health survey Ms. McCann stated that she had lived at 457 East San Francisco St. for one year at the time she completed the survey, and on the Plaintiff Questionnaire plaintiff stated that she had lived at that same address from 1999 through the then-present, 2001. *Compare* Combs Reply Decl. Ex. 2 & 3 at 11.

4

"A statement in a complaint . . . is a judicial admission." *Id*. Plaintiff is bound by the factual assertions contained in her August 1999 complaint, and as a result, she should have reasonably known at that time about the possible connection between alleged Remco contamination and her father's cancer. Even if plaintiff did not actually know about her wrongful death claim until the spring of 2001, because a "plaintiff must be diligent in discovering the critical facts, a plaintiff who did not actually know of his claim will be barred 'if he should have known [of it] in the exercise of due diligence.'" *O'Connor*, 311 F.3d at 1147 (quoting *Bibeau v. Pac. N.W. Research Found. Inc.*, 188 F.3d 1105, 1108 (9th Cir. 1999)).

Plaintiff's responses to the "Confidential Health Survey" further demonstrate that prior to 2001 plaintiff should have reasonably known about her wrongful death claim. Plaintiff states that it was questions about her family's health history and cancer that led her to first believe that her father's cancer had been caused by exposure to Remco chemicals; the "Confidential Health Survey" also contained questions about plaintiff's family's health history and cancer, and indeed plaintiff specifically responded on the survey that her father had died of cancer.

## CONCLUSION

For the foregoing reasons, the Court hereby GRANTS defendants' motion for summary judgment on plaintiff Brenda McCann's wrongful death claim based on decedent John Harrington. (Docket No. 1081). Because the Court's order does not rely on any of the exhibits to which plaintiff has objected, the Court does not address plaintiff's evidentiary objections.

**IT IS SO ORDERED.**

Dated: September 30, 2008

SUSAN ILLSTON
United States District Judge

5