IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONNA AVILA, *et al.*,<br><br>    Plaintiffs,<br><br>    v.<br><br>WILLITS ENVIRONMENTAL REMEDIATION TRUST, *et al.*,<br><br>    Defendants. | No. C 99-03941 SI<br>(Consolidated with Case Nos. C 01-266 SI and C 06-2555 SI)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON STATUTE OF LIMITATIONS GROUNDS** |

On July 29, 2011, the Court held a hearing on defendants' motion for clarification re: statute of limitations. For the reasons set forth below, the motion is GRANTED IN PART and DENIED IN PART.

**BACKGROUND**

These consolidated cases return to this Court after the Ninth Circuit's January 27, 2011 opinion affirming in part and reversing in part various pretrial orders. Plaintiffs filed these cases alleging injuries sustained as a result of improper disposal of hazardous waste at the Remco facility located in Willits, California. Plaintiffs are residents or former residents of the city of Willits, workers at the Remco site, or associated with workers in the site or related to plaintiffs exposed to the contaminants. The complaints allege a number of California tort claims based on hazardous waste contamination, including negligence, negligence per se, loss of consortium, nuisance, and toxic trespass.

On May 31, 2002, defendants filed a motion for summary judgment on statute of limitations grounds for a number of plaintiffs. Tercero Decl. Ex. 2. The parties fully briefed the issues, filing

hundreds of pages of exhibits, and each plaintiff filed multiple page declarations in opposition to defendants' motion. On October 18, 2002, the Court held a hearing on defendants' motion. In an order filed March 14, 2003, the Court granted defendants' motion for summary judgment with respect to plaintiffs who filed claims after August 24, 2000. The Court found that the events, meetings, and publicity were sufficient to establish that:

> 'the only reasonable inference' to be drawn is that all plaintiffs knew or should have known by August 24, 2000, one year from the date on which Ms. Avila filed her suit, that their alleged injuries were caused by the Remco Facility. Therefore, the Court GRANTS defendants' motion for summary adjudication as to the 359[1] plaintiffs who filed their actions after August 24, 2000, and denies defendants' motion for summary adjudication as to the 80 plaintiffs who filed their claims before that date.

Tercero Decl. Ex. 6 at 8.

On November 16, 2009, plaintiffs appealed the order. Plaintiffs contended that the Court erred in "presuming that news reports concerning the filing of [the *Avila*] lawsuit had furnished Plaintiffs with sufficient constructive knowledge of toxic exposure." Tercero Decl. Ex. 7 at 20 (Appellants' Opening Brief).

On January 27, 2011, the Ninth Circuit issued its decision and vacated the order granting summary adjudication against 160 adult plaintiffs. The Court affirmed this Court's finding that plaintiffs knew or should have known that their alleged injuries were caused by the Remco Facility by August 24, 2000, but reversed insofar as this Court held that the statute of limitations expired on the same date:

> [T]he statute of limitations *begins* to run on the date by which the Plaintiffs knew or should have known of their injuries. Therefore, summary judgment would only be appropriate for those Plaintiffs filing one year from August 24, 2000 – the date the district court found they 'should have known' that their alleged injuries were caused by the Remco Facility.

*Avila v. Willits Environmental Remediation Trust*, 633 F.3d 828, 841 (9th Cir. 2011) (emphasis in original). The Ninth Circuit stated, "Both parties apparently assumed that the district court meant that Plaintiffs should have known of their injuries a year *before* August 24, 2000, *i.e.*, as of the filing of

---

[1] Defendants state that although this Court granted summary judgment against 359 plaintiffs on statute of limitations grounds, fifteen of these individuals were minor or incompetent plaintiffs, 176 plaintiffs settled their claims, and eight were not named on the amended notice of appeal, thereby leaving only 160 statute of limitations plaintiffs on appeal.

Avila's suit on August 23, 1999." *Id.* (emphasis in original). The Ninth Circuit held that such a finding was not supported by the record because this Court's summary judgment order relied on meetings, events, and publicity that occurred after August 23, 1999. *Id.* at 841-43.

On remand, defendants have filed a motion for clarification regarding the statute of limitations in light of the Ninth Circuit's opinion.[2] Defendants assert that based upon the Ninth Circuit's opinion, the Court should hold that eighty-six plaintiffs who filed suit after August 23, 2001 are time-barred. Defendants further contend that the Court should enter summary judgment against seven plaintiffs who filed suit prior to August 23, 2001 because (1) five of those plaintiffs had actual knowledge of their claims more than one year before filing, and (2) two of those plaintiffs failed to sign their declarations in opposition to defendants' 2002 motion for summary adjudication, and therefore failed to meet their evidentiary burden to show that they are entitled to the discovery rule tolling the statute of limitations.

**LEGAL STANDARD**

Summary adjudication is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In a motion for summary judgment, "[if] the moving party for summary judgment meets its initial burden of identifying for the court those portions of the materials on file that it believes demonstrate the absence of any genuine issues of material fact, the burden of production then shifts so that the non- moving party must set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial." *See T.W. Elec. Service, Inc., v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)). In judging evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, and draws all inferences in the light most favorable to the non-moving party. *See T.W.*

---

[2] Plaintiffs assert that defendants' "motion for clarification" is procedurally improper, and that defendants should have sought clarification from the Ninth Circuit if clarification was needed. Opp'n at 1:12-14. Plaintiffs' argument lacks merit. Defendants' motion does not contend that there is any ambiguity in the Ninth Circuit's opinion, and instead contends that, based upon the Ninth Circuit's decision, summary judgment should be entered on a number of plaintiffs' claims. After the mandate issued, the Court held a case management conference on April 1, 2011, and after conferring with the parties, set a briefing schedule on defendants' "motion for clarification re: statute of limitations." Docket No. 1334 in C 99-3941 SI (minutes).

*Electric*, 809 F.2d at 630-31 (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)); *Ting v. United States*, 927 F.2d 1504, 1509 (9th Cir. 1991). The evidence presented by the parties must be admissible. *See* Fed. R. Civ. P. 56(c)(4). Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *See Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

## DISCUSSION

### I. Applicable statute of limitations

As an initial matter, the parties dispute whether plaintiffs' claims are subject to the one year statute of limitations for personal injury claims in effect at the time they filed these suits, Cal. Code Civ. Proc. § 340.3 (2001), or whether the two year statute of limitations for personal injury claims based on exposure to hazardous substances, effective January 1, 2004, governs. Cal. Code Civ. Proc. § 340.8.

In *Krupnick v. Duke Energy Morro Bay, L.L.C.*, 115 Cal. App. 4th 1026, 1029 (2004), the California Court of Appeal analyzed a similar question, holding that the two year statute of limitations for personal injury claims set forth in amended California Code of Civil Procedure § 340.3, effective January 1, 2003, only applied prospectively. In *Krupnick*, a plaintiff filed a personal injury lawsuit on January 8, 2003, seeking to recover for an accident that occurred on January 26, 2001. *Id*. at 1027. At the time of the plaintiff's injury, as is the case here, the former version of § 340.3 provided a one year statute of limitations for personal injury claims. *Id*. at 1028. The plaintiff argued that the new extended statute of limitations applied to his claim. The court disagreed, holding that "an enlargement of limitations operates prospectively unless the statute provides otherwise." *Id*. at 1029. The court noted that Section 340.3 was silent as to retroactivity, and because the limitations period had otherwise expired for the plaintiff's claim prior to the effective date of the new statute, the new expanded limitations period did not revive the plaintiff's claim. *Id*. The court distinguished Section 340.3 from Section 340.10, which addressed injury claims for victims of the 9/11 terrorist attacks, and explicitly provided for retroactivity of the expanded statute of limitations for the claims of those plaintiffs. *Id*. at 1029 ("Thus, the Legislature expressly singled out only one class of plaintiffs—'9/11' terrorist victims—as

4

entitled to the retroactive application of section 335.1. Appellant is not a member of this class. Pursuant to general principles of statutory construction, section 335.1 should be construed as not applying retroactively to him . . . .").

Section 340.8, which plaintiffs seek to invoke, took effect on January 1, 2004, and makes no mention of retroactivity. Under the reasoning of *Krupnick*, Section 340.8's two year statute of limitations does not apply to plaintiffs' claims. Plaintiffs rely on *Mudd v. McColgan*, 30 Cal. 2d 463 (1947), to assert that "an amendment which enlarges a period of limitation applies to pending matters where not otherwise expressly excepted." *Id*. at 468. However, as defendants note, *Mudd* only applied an amended and enlarged statute of limitations where the matters were pending and the statute of limitations had not already run.

> Such legislation affects the remedy and is applicable to matters not already barred, without retroactive effect. Because the operation is prospective rather than retrospective, there is no impairment of vested rights. Moreover, a party has no vested right in the running of a statute of limitation prior to its expiration. He is deemed to suffer no injury if, at the time of an amendment extending the period of limitation for recovery, he is under obligation to pay.

*Id*. at 468; *see also Douglas Aircraft Co. v. Cranston*, 58 Cal. 2d 462, 465 (1962) (discussing *Mudd* and stating that "[t]hese rules afford warning to potential defendants that until the statute of limitations has run it may be extended, whereas after it has run, they may rely upon it in conducting their affairs."). Here, the statute of limitations on plaintiffs' claims expired long before the new statute of limitations took effect on January 1, 2004. The fact that the related *Avila* cases were pending on January 1, 2004 does not revive these lapsed claims.

Plaintiffs also assert, without any supporting argument, that the previous one year statute of limitations is "unfair," and thus that the Court should apply the two year statute of limitations. The authority cited by plaintiffs, *In re Marriage of Powers*, 218 Cal. App. 3d 626 (1990), did not address statute of limitations, and is inapposite. *See generally id*. (affirming trial court's retroactive application of Civil Code provision empowering courts to make "whatever orders are necessary or appropriate to assure that each party receives his or her full community property share . . . including survivor benefits" in marital dissolution proceedings, where prior judicially-created "terminable interest" rule, under which the nonemployee spouse's interest in benefits terminated at nonemployee spouse's death, was deemed

5

unfair).

## II.     Eighty six plaintiffs who filed claims after August 23, 2001

The parties dispute the import of the Ninth Circuit's decision. Defendants contend that the Ninth Circuit held that there is sufficient evidence in the record to support this Court's holding that plaintiffs should have known that Remco was the likely cause of their injuries by August 24, 2000. Thus, defendants contend that summary judgment is appropriate for the eighty-six plaintiffs who filed suit more than one year after this date, *i.e.*, after August 23, 2001.

Plaintiffs assert that the Ninth Circuit wholly reversed this Court's March 14, 2003 order, and "the appellate court reinstated [plaintiffs'] case eight years later so it could be tried on the merits." Opp'n at 1:7-8. Plaintiffs also assert that the Ninth Circuit did not state that the statute of limitations issue could be decided as a matter of law, but rather that there are numerous factual issues that should be decided by a jury.

The Court agrees with defendants' interpretation of the Ninth Circuit's decision. As an initial matter, the Ninth Circuit stated that "[t]he district court correctly held that [the statute of limitations] issue may be decided on summary judgment." *Avila*, 633 F.3d at 841.

> Summary judgment is appropriate when the material facts are undisputed and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Here, the events and publicity in and around Willits are undisputed. It is also undisputed for purposes of summary judgment that Plaintiffs knew of their injuries more than a year before filing suit. The only issue is a matter of law – considering the evidence, should Plaintiffs have known of the cause of their injuries more than a year prior to filing suit.

*Id*. Thus, plaintiffs are incorrect when they assert that the Ninth Circuit stated that the statute of limitations question could not be decided on summary judgment.

Plaintiffs also assert that the Ninth Circuit did not hold that August 24, 2000, was the date upon which plaintiffs "should have known" of their cause of action to file their lawsuits. However, a reading of the Ninth Circuit's decision shows that this is exactly what the Ninth Circuit held. The Ninth Circuit first stated the standard for summary judgment on statute of limitations grounds:

> Under CERCLA's provisions, a limitations period does not begin until the date "that [a plaintiff] knows or reasonably should have known" of both the existence and the cause of the injury. *O'Connor v. Boeing N. Am., Inc.*, 311 F.3d 1139, 1147-48 (9th Cir. 2002). California's statute of limitations for personal injury at the time of suit was

6

"within one year." Cal. Civ. Proc. Code § 340(3) (2001). Therefore, summary judgment was proper if the only "reasonable inference that can be drawn is that Plaintiffs knew or should have known more than one year before filing their claims that the [Remco] contamination was the cause of their diseases." *O'Connor*, 311 F.3d at 1149-50. In other words, Plaintiffs had one year from the date that they "should have known" of their cause of action to file their lawsuits.

*Id*. at 841.

The Ninth Circuit then reviewed this Court's determination that "'the only reasonable inference' to be drawn is that all plaintiffs knew or should have known by August 24, 2000, one year from the date on which Ms. Avila filed her suit, that their alleged injuries were caused by the Remco facility.'" *Id*. The Ninth Circuit held that it was erroneous as a matter of law to hold that the statute of limitations expired on that same day. *Id*. The Ninth Circuit then noted,

> Both parties apparently assumed that the district court meant that Plaintiffs should have known of their injuries a year *before* August 24, 2000, *i.e.*, as of the filing of Avila's suit on August 23, 1999. While such an interpretation would be a valid application of the law, it is contradicted by the facts articulated in the district court's order. To begin with, the district court states "after the Avila suit was filed on August 23, 1999, there was substantial resulting publicity about the health risks posed by contamination from the Remco site." In addition, the district court specifically cited Avila's health survey (conducted in September 1999), and Erin Brockovich and Ed Masry speaking in Willits in August 4, 2000. If Plaintiffs should have known of their injury and its cause as of August 1999, such publicity would have been irrelevant.

*Id*. The Ninth Circuit further stated, "holding August 24, 1999 as the date by which Plaintiffs should have known of the date of their injuries is not supported by the record before us" because "[i]nformation on Remco prior to August 1999 focused primarily on legal issues and the contamination. Very little information indicated that Remco could be the cause of Plaintiffs' alleged injuries." *Id*. At 842.

The Ninth Circuit then reviewed, in detail, the events and publicity in Willits and the surrounding area leading up to August 24, 2000. *Id*. at 841-43. The Ninth Circuit concluded,

> The ever-increasing interest in health issues associated with the Remco contamination (evidence in the excerpts of record on appeal) demonstrates that by August 24, 2000, people with a reasonable degree of awareness should have known that contamination from Remco was a serious health concern and made further inquiry. Therefore, Plaintiffs should have known that Remco was the likely cause of their injuries no later than August 24, 2000. However, not having the full record before us, we decline to determine a precise date by which they should have known. We therefore (1) hold that as a matter of law, the events leading up to August 24, 1999 were insufficient for the court to conclude "the only reasonable inference" was the Plaintiffs should know of their cause of action as of that date, and (2) vacate the court's grant of summary judgment dismissing all claims filed after August 24, 2000.

*Id*. at 843.

7

Plaintiffs place great weight on the Ninth Circuit's statement that, "not having the full record before us, we decline to determine a precise date by which they should have known." *Id*. Plaintiffs rely on this sentence to argue that the Ninth Circuit was leaving open the possibility for a later (post- August 24, 2000) "should have known" date. The Court disagrees. This sentence, when read in context, means that the Ninth Circuit was allowing for the possibility of an *earlier* "should have known" date – sometime after the filing of the *Avila* action in August 1999, but before August 24, 2000. Thus, contrary to plaintiffs' arguments on remand, the Ninth Circuit expressly found that by August 24, 2000, a reasonable person would both have known that "Remco contamination was a serious health concern," and that "Remco was the likely cause of their injuries." *Id*. at 843.

Plaintiffs also argue, as they did to this Court in opposition to the original statute of limitations motion, and to the Ninth Circuit on appeal, that "[i]t has never been the law in California that mere existence of news reports is sufficient to impute knowledge of the reports to an individual, let alone a whole group." Opp'n at 7:17-18. *See* Tercero Decl. Ex. 7 at 26-36 (Appellant's Opening Brief); Gilbreth Reply Decl. Ex. 2 at 8-12 (Appellant's Reply Brief); Gilbreth Reply Decl. Ex. 3 at 13-14 (2002 Opposition to Motion for Summary Adjudication). This argument ignores the fact that this Court (and the Ninth Circuit) based its constructive knowledge findings not just on media reports, but also on town meetings, the filing of numerous lawsuits, the resident-led health survey, public health testing and investigation, and the presence in Willits of celebrities, investigators, and plaintiffs lawyers seeking clients. *See* March 13, 2003 Order at 6 (Tercero Decl. Ex. 6); *Avila*, 633 F.3d at 842-43.[3]

Accordingly, the Court holds that the 86 plaintiffs who filed suit after August 23, 2001 are time-barred. A list of those plaintiffs is attached as Exhibit A to this Order.

---

[3] Plaintiffs also rely on this Court's October 21, 2009 order in *Whitlock*, in which the Court largely denied defendants' motion for summary judgment on statute of limitations grounds. Docket No. 75 in C 08-2742 SI. As defendants note, the Court issued that order prior to the Ninth Circuit's opinion in *Avila*. The Ninth Circuit's holding that plaintiffs "should have known" of their claims by August 24, 2000 is the law of these consolidated cases. Moreover, if this Court had had the benefit of the Ninth Circuit's statute of limitations opinion in *Avila* prior to issuing the *Whitlock* statute of limitations order, the result in *Whitlock* might very well have been different.

### III.     Plaintiffs Scott White, Sr. and Joshua Potter

Plaintiffs Scott White, Sr. and Joshua Potter filed their claims before August 23, 2001. Plaintiff Scott White, Sr. joined this action on January 16, 2001, and Joshua Potter joined this action on August 6, 2001. During the litigation of defendants' 2002 motion for summary adjudication, plaintiffs conceded that their injuries occurred outside the relevant statute of limitations, and thus that their claims were untimely under the "traditional" rule of statute of limitations. *See Avila*, 633 F.3d at 841; March 14, 2003 Order at 5:9-11. However, plaintiffs invoked California's "discovery rule," which "postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." *Norgart v. Upjohn Co.*, 21 Cal. 4th 383, 397 (1999). "Because Plaintiffs have the burden of proof at trial to establish that they are entitled to the benefit of the discovery rule, to defeat summary judgment they were required to come forward with evidence establishing a triable issue of fact with regard to whether the discovery rule applies." *O'Connor*, 311 F.3d at 1150.

Defendants contend that the Court should grant summary judgment on the claims of plaintiffs Potter and White, Sr. because these plaintiffs failed to submit any admissible evidence showing that the discovery rule applies. When defendants' motion for summary adjudication on statute of limitations grounds was originally briefed, Mr. Potter and Mr. White, Sr. failed to sign their declarations in opposition to defendants' motion. Defendants moved to strike all unsigned declarations, and in the March 14, 2003 order, the Court granted defendants' motion "only as to those eleven declarations that are as yet unsigned, and strikes them." March 14, 2003 Order at 19:16-18.[4] Mr. Potter and Mr. White, Sr., were among those plaintiffs whose unsigned declarations were stricken.

It is undisputed that Mr. White, Sr. did not file a signed declaration in opposition to defendants' 2002 motion for summary adjudication. However, plaintiffs contend that the "identical" information was provided in Mr. White, Sr.'s signed supplemental questionnaire, which was filed in opposition to the 2002 motion. Pl's Ex. 4. Plaintiffs rely on Mr. White, Sr.'s response to the following question:

> [Question] Describe when and how you first suspected that any of the injuries or medical conditions for which you are seeking compensation in this lawsuit were caused by or associated with the former Remco operations in Willits, California. If you are

---

[4] The order states that after defendants filed the motion to strike, plaintiffs filed signed declarations for 23 of the 34 plaintiffs at issue. *Id*.

9

> completing this Questionnaire on behalf of someone else, please provide this information for that person.
>
> [Response] I learned about the contamination at the Remco plant and that the chemicals from the plant may be making us sick in June 2000 when I spoke with a friend about the health risks know[n] about people working at Remco. I then read an article about the areas contaminated and some of the health effects. I got concerned and contacted lawyers to help. This knowledge caused the fear of getting cancer or some other unknown illness from Remco chemicals to begin.

Pl's Ex. 4.

Summary judgment is improper "unless the only reasonable inference that can be drawn is that Plaintiffs knew or should have known more than one year before filing their claims that the [Remco] contamination was the cause of their diseases." *O'Connor*, 311 F.3d at 1139. Although it is a very close call, the Court concludes that the questionnaire raises a triable issue of fact as to whether the discovery rule applies, and accordingly DENIES summary judgment.

With respect to Mr. Potter, plaintiffs assert that he filed a signed declaration on the date of the hearing, October 18, 2002. Pl's Ex. 1. The copy of the declaration filed by plaintiffs is signed, but undated, and is stamped "Filed Oct. 18, 2002." *Id*. That declaration states, *inter alia*, that Mr. Potter "first suspected that my medical condition(s) might have been related to or caused by Remco's chemicals in approximately late November, 2000. Prior to such time, I did not suspect Remco chemicals were the cause of my illnesses nor did I have any reason to suspect Remco was the cause of my illnesses prior to such time." *Id*. ¶ 3.

The Court finds that Mr. Potter's signed declaration raises a triable issue of fact as to whether his claim is time-barred. It appears that the Court's March 2003 order striking Mr. Potter's declaration may have been in error. The March 14, 2003 order states that the Court granted defendants' motion "only as to those eleven declarations that are *as yet unsigned*, and strikes them." March 14, 2003 Order at 19:16-18 (emphasis added). At the time of the March 14, 2003 order, Mr. Potter had filed a signed (although undated) declaration. In any event, on remand the Court will consider Mr. Potter's signed declaration, and based upon that declaration, DENIES defendants' motion for summary judgment on Mr. Potter's claims.

### IV.  **Plaintiff Philip Joshua Colvard**

Defendants assert that plaintiff "Philip Colvard" filed his claims on June 7, 2001, citing the First Amended Complaint filed in *Arlich, et al. v. Willits Environmental Remediation Trust, et al.*, C 01-266 SI (Docket No. 7). Defendants contend that Mr. Colvard's claims are time-barred because a year before filing, Mr. Colvard met with a law firm to discuss a possible lawsuit regarding Remco contamination. Tercero Decl. Ex. 9 (listing "Philip J. Colvard" as having met with a law firm), 19.

Plaintiffs respond that Mr. Colvard filed his claims earlier, in the original *Arlich* complaint filed on January 16, 2001. Both the original and first amended complaints filed in *Arlich* list "Josh Colvard" as a plaintiff; neither complaint lists "Philip Colvard." The Court's March 14, 2003 Order identifies Mr. Colvard as "Philip Joshua Colvard." Tercero Decl. Ex. 6, App. A. Accordingly, it appears that the "Philip Colvard" identified in defendants' papers is the same Philip Joshua Colvard who filed the initial *Arlich* complaint, and thus defendants have not shown that Mr. Colvard's claims are untimely. The Court DENIES defendants' motion with regard to Mr. Colvard.

### V.  **Plaintiff Sean Convery**

Plaintiff Sean Convery filed his claims on January 16, 2001, in the original *Arlich* complaint. Defendants contend that Mr. Convery should be charged with actual knowledge of his claims as of January 15, 2000, the date of a public meeting regarding Remco contamination, that Mr. Colvard admits he attended. Defendants assert that both this Court and the Ninth Circuit acknowledged that the public meeting discussed the Remco contamination, the cleanup, and possible health risks to the community, and that at least two of the injuries claimed by Mr. Convery – cancer and nosebleeds – were discussed at the meeting. Defendants contend that Mr. Convery's claims are therefore time-barred because he had actual knowledge of his claims over one year before he filed suit.

Plaintiffs respond, *inter alia*, that January 15, 2001 was a federal court holiday, and thus even accepting defendants' argument that the January 15, 2000 public meeting put Mr. Convery on actual notice of his claims, his complaint on January 16, 2001 was timely. Pl's Ex. 7 (Statement from N.D. Cal. confirming that January 15, 2001 was a federal court holiday). Defendants' reply does not address this argument. The Court concludes that defendants have not met their burden to show that Mr.

Convery's claims are time-barred, and DENIES defendants' motion for summary judgment with respect to Mr. Convery.

## VI.  Plaintiffs Sarah Greenlaw and Patricia Stansberry

Plaintiff Sarah Greenlaw filed her claims on January 16, 2001, in the original *Arlich* complaint. Plaintiff Patricia Stansberry filed her claim on August 6, 2001. Docket No. 27 in C 01-266 SI. Defendants contend that both plaintiffs admitted that they knew about the contamination at the Remco Facility more than a year before filing their claims. Defendants rely on Ms. Greenlaw's response to the following question on a questionnaire:

> [Question] Describe when and how you first suspected that any of the injuries or medical conditions for which you are seeking compensation in this lawsuit were caused by or associated with the former Remco operations in Willits, California. If you are completing this Questionnaire on behalf of someone else, please provide this information for that person.
>
> [Response] I learned about the contamination at the Remco plant [in] 1998. I later learned that the chemicals from the plant may be making people sick in about April of 2000, when I spoke with friends and family, attended a meeting and read documents about the situation. . . .

Tercero Decl. Ex. 12. In response to the same question, Ms. Stansberry stated,

> I learned about the contamination at the Remco plant in approximately April of 2000. I later learned that the chemicals from the plant may be making people sick in October of 2000 when I read an article and spoke with family members about the situation.

*Id.* Ex. 13.

As with plaintiffs White, Sr. and Potter, the Court finds that plaintiffs have raised a triable issue of fact sufficient to defeat summary judgment on statute of limitations grounds, and DENIES defendants' motion with respect to these plaintiffs.

## VI.  Frank Avila

Plaintiff Frank Avila's mother, Theodora Avila, died on November 18, 1998, from breast cancer. Tercero Decl. Ex. 16 at 2. Frank Avila filed his own personal injury lawsuit regarding Remco on August 23, 1999. Docket No. 1 in 99-3941 SI. On January 16, 2001, Mr. Avila filed a wrongful death action with respect to Theodora Avila.

Defendants argue that because Frank Avila had actual knowledge of his own claims on August 23, 1999, he is charged with actual knowledge on the same date with respect to the wrongful death claim for Theodora Avila, and thus the wrongful death claim is untimely. Defendants assert that in the appellate opinion, the Ninth Circuit considered a similar issue with respect to another plaintiff, Brenda McCann. Ms. McCann filed a wrongful death lawsuit on behalf of her father more than one year after she filed her own personal injury claim related to Remco. *See Avila*, 633 F.3d at 843-44. The Ninth Circuit affirmed the dismissal of the wrongful death claim. "Although McCann asserts that she assumed until the spring of 2001 that her father's cancer and death were attributable to smoking, the discovery rule does not save the wrongful death claim because her individual complaint, filed on August 23, 1999, avers that hexavalent chromium was a known carcinogen." *Id*. at 843.

In response, plaintiffs assert, *inter alia*, that at the time of his mother's death, Mr. Avila did not know whether the cause of death was diabetes or breast cancer, and that he did not know that hexavalent chromium could cause any kind of cancer other than lung cancer. Mr. Avila's 2002 declaration states that he "did not realize that I had a wrongful death case and survivor action claim for my mother until early 2000." Pl's Ex. 8 ¶ 14. Plaintiffs have submitted a new declaration from Mr. Avila, in which he states,

> When I filed my lawsuit in August 1999, I knew that hexavalent chromium was a carcinogen and could cause cancer, but I did not know that it could cause any kind of cancer other than lung cancer. Other family members were taking care of my mother when she died in 1998, and I was not certain whether the cause of death was diabetes or cancer, or what type of cancer she had. My best recollection is that when I received her death certificate in early 2000, I learned for the first time that she died of breast cancer.
> After receiving my mother's death certificate, I did some reading and research on hexavalent chromium and [on] volatile organic compounds. I learned for the first time of other cancers that could be caused due to exposure to hexavalent chromium, and that it was at least possible that she had contracted breast cancer due to exposure to hexavalent chromium. I also learned for the first time that she could have contracted breast cancer due to exposure to volatile organic compounds.

Pl's Ex. 9 ¶¶ 2-3.

Defendants contend that Mr. Avila "cannot legitimately claim that he was ignorant of his mother's cause of death" because Theodora lived with him until shortly before her death, and because Mr. Avila testified at his deposition that during the time she lived with him she lost one of her breasts. Gilbreth Reply Decl. Ex. 6 at 271:10-272:2, 137:3 (F. Avila Dep.); Ex. 7 ¶ 14 (F. Avila Decl.).

13

Defendants also argue that the central theme of plaintiffs' case from its inception is that hexavalent chromium is a carcinogen, and thus that Mr. Avila "cannot legitimately claim that he was completely ignorant of the possibility that his mother's breast cancer was caused by chromium even though he was aware that it was a known human carcinogen as early as 1999." Reply at 14:9-11.

The Court finds that there are triable issues of fact regarding when Mr. Avila's wrongful death claim accrued. On summary judgment, the Court is not permitted to make credibility determinations, and thus the Court must accept Mr. Avila's statements that he did not know the cause of his mother's death until early 2000. The Court also finds that Mr. Avila's new declaration is not procedurally improper, as there is nothing in the Ninth Circuit's decision or this Court's orders precluding plaintiffs from submitting additional evidence in response to the instant motion. Accordingly, the Court DENIES defendants' motion with respect to Mr. Avila's wrongful death claim.

## CONCLUSION

For the foregoing reasons, defendants' motion for clarification is GRANTED in part and DENIED in part. Docket No. 1341.

**IT IS SO ORDERED.**

Dated:   July 29, 2011

SUSAN ILLSTON
United States District Judge